UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LISA R. CHRISTOFFEL,            )<br>      Plaintiff,           )<br>                                 )<br>  v.                             )<br>                                 )   CAUSE NO.: 1:12-CV-148-JEM<br>CAROLYN W. COLVIN,               )<br>Acting Commissioner of the      )<br>Social Security Administration, )<br>      Defendant.           )| |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lisa R. Christoffel on May 11, 2012, and a Plaintiff's Brief (Corrected) [DE 13], filed by Plaintiff on August 26, 2012. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On November 29, 2012, the Commissioner filed a response, and on December 17, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On April 16, 2009, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on March 14, 2009. Plaintiff's application was denied initially and upon reconsideration. On July 2, 2010, Administrative Law Judge ("ALJ") John S. Pope held a hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On December 2, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act

    on March 31, 2010.

2.  The claimant did not engage in substantial gainful activity furing the period from her alleged onset date of March 14, 2009, through her date last insured of March 31, 2010 (20 CFR 404.1571 *et seq*.).

3.  Through the date last insured, the claimant had the following severe impairments: Degenerative Disc Disease; Depression; and Post-Traumatic Stress Disorder (PTSD) (20 CFR 404.1250(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she was limited to unskilled work with the ability to alternate sitting and standing.  She can never climb ladders, ropes, or scaffolds.  She can only occasionally (amounting to, cumulatively, very little up to one-third of an 8-hour workday) climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on August 15, 1969, and was 49 years old, defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from March 14, 2009, the alleged onset date, through March 31, 2010, the date last inured (20 CFR 404.1520(g)).

On March 19, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

**A.    Background**

Plaintiff was 49 years old on her date last insured, four and a half months shy of turning 50. She had an eleventh grade education and past work experience in industrial maintenance and cleaning.

**B.    Medical and Mental Health Evidence**

Plaintiff has a history of back pain and degenerative disc disease, including the need for surgical lumbar decompression and back fusion surgery.

On September 9, 2008, Plaintiff suffered and open fracture of both bones in her right lower leg that required several surgeries. She developed a severe MRSA infection and used supportive mechanisms to reduce weight-bearing through at least March, 2009, and continued to experience right ankle pain and decreased range of motion in an examination performed June 24, 2009.

Plaintiff was treated for pain by Dr. David Bojrab, a pain specialist. He prescribed pain medication, including surgical injections. His April, 2009, assessment revealed lumbar/thoracic radiculopathy, lubar back pain lumbago, and sacroilitis.

On October 9, 2009, a discogram study of Plaintiff's spine revealed concordant diskogenic pain and moderate degenerative changes at L4-L5 and moderate to severe degenerative changes at L5-SI. On October 22, 2009, Dr. Kevin A. Rahn recommended that Plaintiff consider additional surgery, giving it a 50/50 chance of alleviating some of her back pain. As of the time of the hearing Plaintiff had not consented to the surgery.

At the hearing, Plaintiff testified that she used a cane on occasion to alleviate back and leg pain.

Plaintiff also suffers from chronic Hepatitis C that causes abdominal pain and digestive system maladies including hiatal hernia, recurring chronic gastritis and esophagitis, hemorrhoids, and colon abnormalities.

On February 6, 2006, Plaintiff began psychiatric treatment at Neuropsychiatric Associates, PC. There are treatment notes in the record from this provider through April 5, 2010. On June 3, 2010, Plaintiff attempted to commit suicide. She has been diagnosed with depression and post-traumatic stress disorder (PTSD).

Plaintiff is on a number of medications, including Neurontin, Vicodin, Gabapentin, Nexium, and Seroquel.

**C.    Vocational Expert Testimony**

At the Administrative Hearing, Timothy Bobrowski testified as a neutral vocational expert. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and past work experience who could perform unskilled, sedentary work but could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps and stairs, could occasionally balance, stoop, kneel, crouch, and crawl, and needed the ability to alternate sitting and standing. The VE testified

that the individual would be unable to perform Plaintiff's past work, but identified jobs in the regional economy that the individual could perform, including hand packager, bench assembler, and inspector.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse

the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also

6

prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four,

whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.**     **Borderline Age**

Plaintiff argues that the ALJ made several errors of reasoning and explanation. First, Plaintiff argues that the ALJ erred in failing to consider how her borderline age affects the application of the Medical-Vocational guidelines at step five.

ALJs are instructed to take a claimant's age into account when determining whether they will be able to work and the regulations explicitly state that the ALJ may "not apply the age categories mechanically in a borderline age situation." 20 C.F.R. § 404.1563(b). A claimant between the ages of 50 and 54 is considered "closely approaching advanced age," and the ALJ is directed to "consider that [the claimant's] age along with severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work." 20 C.F.R. § 404.1563(d). Although claimants under the age of 50 are generally considered part of the "younger person" age group, "in some circumstances, [the ALJ must] consider that persons age 45-49 are more limited in their ability to adjust to work." 20 C.F.R. § 404.1563(c). The Medical Vocational Guidelines also take a claimant's age into account. 20 C.F.R. § 404, Subpt. P, App. 2.

Plaintiff was within a few months of turning 50 on the date her insured eligibility expired. Plaintiff argues that the ALJ mechanically applied the Medical Vocational Guidelines and did not consider her borderline age. The Commissioner argues that the ALJ was not required to find that Plaintiff should have been considered to be in the "closely approaching advanced age group" and that the ALJ was not required to explain his use of Plaintiff's chronological age.

There is no evidence in this case that the ALJ even considered Plaintiff's borderline age or did anything other than apply the age categories mechanically. "Although case law on this issue has not been well-developed in the Seventh Circuit, district courts have reversed and remanded an ALJ's decision where a borderline age situation exists but there is no evidence the ALJ considered the issue." *Zent v. Astrue*, No. 1:10-CV-80, 2010 WL 5231314, at *7, 2010 U.S. Dist. LEXIS 133382, at *19-20 (N.D. Ind. Dec. 16, 2010) (listing cases). There is no way for the Court to trace the ALJ's reasoning to determine if he improperly applied the age categories mechanically or appropriately "consider[ed] whether to use the older age category after evaluating the overall impact of all the factors of [Plaintiff's] case." 20 C.F.R. § 404.1563(b); *see also Anderson v. Astrue*, No. 09 C 2399, 2011 WL 2416265, at *14, 2011 U.S. Dist. LEXIS 62862, at *41-42 (N.D. Ill. June 13, 2011) ("The ALJ must, at a minimum, acknowledge that he considered the borderline-age issue non-mechanically, and doing so likely requires some explanation, however brief, of the conclusion he reached."). This lack of explanation is particularly concerning given that Plaintiff is already subject to numerous limitations in her ability to work and would likely be entitled to benefits if she were in the higher age group. On remand, the ALJ need not automatically re-classify Plaintiff as an "individual closely approaching advanced age," but must consider whether re-classification is appropriate and give enough explanation of his reasoning to permit review.

**B.    RFC**

Plaintiff also argues that the ALJ's RFC assessment does not take into account all of Plaintiff's impairments or explain how they were taken into account. The Commissioner argues that the RFC is supported by substantial evidence.

The RFC is a measure of what an individual can do despite the limitations imposed by his

9

impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n. 2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96–8p. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at a RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96–8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe' "because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id*. Although the ALJ need not discuss all the evidence, he must consider all the evidence that is relevant to making a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); 362 F.3d at 1002; SSR 96–8p.

    1.    <u>Mental Limitations</u>

Plaintiff argues that the ALJ failed to make a mental RFC assessment taking into account all of the impairments the ALJ found to be "severe" at step two. Despite concluding that Plaintiff's PTSD and depression were severe impairments at step two of the evaluation process and concluding that Plaintiff had moderate difficulties with concentration, persistence, or pace, the ALJ did not describe how the RFC accounted for these limitations.

The Commissioner argues that the ALJ found that Plaintiff's limitations in concentration, persistence, and pace did not prevent Plaintiff from completing tasks in a work setting. The ALJ

described Plaintiff's ability to focus on a mental exercise for seventeen seconds and her failure to correctly subtract serial sevens in a second exercise to support his conclusion that Plaintiff remains "able to function satisfactorily in sustaining attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." AR 14. It is unclear to the Court how Plaintiff's inability to stay on task for longer than a few seconds demonstrates her ability to perform work tasks over an eight hour workday, and there is no indication of how the RFC takes into account the limitations in concentration, persistence, and pace found by the ALJ. To the extent that the Commissioner is arguing that limiting Plaintiff to simple, unskilled work takes into account her limitations in concentration, persistence and pace, that argument is unavailing. *Craft*, 539 F.3d at 677 ("the ALJ's RFC . . . ostensibly accounted for [the plaintiff]'s mental impairments by limiting him to simple, unskilled work. However, the Social Security Administration has explained: '[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.'") (quoting SSR 85-15, 1985 SSR LEXIS 20).

Furthermore, the ALJ has completely failed to account for Plaintiff's depression and PTSD in his RCF assessment, despite finding them to be severe impairments at step two. In short, the Court is unable to trace the path of the ALJ's reasoning regarding his inclusion of her mental limitations in the RFC.

    2.    <u>Physical Limitations</u>

In addition, Plaintiff argues that the ALJ failed to take into account some of Plaintiff's

physical limitations in the RFC. She argues that he failed to address the continuing effects of Plaintiff's past open leg fracture and completely ignored a number of Plaintiff's other ailments. Although Plaintiff admits that her leg fracture occurred before the alleged date of disability onset, she argues that she had surgery on her leg after the onset date and continues to have pain and mobility limitations, including ongoing need for a cane. Plaintiff argues that the ALJ erred in failing to incorporate any of Plaintiff's limitations because of her leg in the RFC and failed to deem her injury's consequences vocationally material at step two. The Commissioner argues that Plaintiff has not alleged that any residual limitations from her leg fracture would prevent her from performing the highly limited range of work in the RFC.

Plaintiff describes the extent of Plaintiff's leg fracture and the extended treatment, including multiple surgeries and the need for supportive devices, including a wheelchair and cane. At an exam on June 24, 2009, the examining doctor noted Plaintiff's reports of right ankle and right food pain and on exam found antalgic gait, capacity for only partial weight bearing on the right, an inability to perform ambulatory maneuvers, and the use of a cane. Although the ALJ mentions the fracture, he does not mention Plaintiff's ongoing problems stemming from the fracture, including the testimony regarding her need for a cane, and the Court is concerned that he did not fully consider all of the relevant medical evidence.

Plaintiff also argues that the ALJ erred by failing to mention a number of Plaintiff's other ailments and failing to consider the combined effect of all Plaintiff's impairments. The Commissioner argues that the ALJ stated that Plaintiff did not have a combination of impairments that met a listing satisfying the requirement to consider the combined effect of her impairments, and that Plaintiff is asking the Court to re-weigh the evidence and find new functional limitations.

The Commissioner skips over part of Plaintiff's argument: that the ALJ failed to even consider several of Plaintiff's ailments, either alone or in combination. Plaintiff argues that the ALJ failed to analyze her chronic Hepatis C infection, hiatal hernia and other digestive system disorders, hemorrhoids, diverticulosis, or tardive dyskinesia. None of these disorders are mentioned in the ALJ's opinion. "Although these impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). Although the Commissioner may be correct that, even considered in combination, these additional disorders do not add any further limitations to the RFC, there is no indication that the ALJ considered their possible impact at all. His blanket statements that he "has considered all symptoms" and "has carefully reviewed and considered all the evidence regardless of whether it is specifically cited in this decision," A.R. 15, 16, are insufficient to reassure the Court that the ALJ has indeed considered Plaintiff's myriad disorders or allow it to trace his reasoning.

Although "the ALJ need not provide a written evaluation of every piece of evidence," *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), in this case the Court is left wondering if the ALJ considered the possible limitations caused or exacerbated by any of Plaintiff's mental limitations or non-severe physical ailments. The ALJ has not explained how, or even if, his RFC takes into account Plaintiff's limitations in concentration, persistence, and pace, her severe impairments of

13

PTSD and depression, or the aggregate affects of Plaintiff's physical impairments, including those that are not severe. On remand, the ALJ must "consider the aggregate effects of [the] claimant's impairments, including impairments that, in isolation, are not severe," *Getch*, 539 F.3d at 483, including, in this case, Plaintiff's ongoing problems stemming from her leg fracture and her other ailments. The ALJ also must include a mental RFC and describe how it takes into account Plaintiff's mental limitations, include her limitations in concentration, persistence, and pace and her severe impairments of depression and PTSD.

**C.      Vocational Expert Testimony**

Plaintiff also argues that Plaintiff's moderate limitations in concentration, persistence, and pace were not included in the hypothetical to the VE.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young*, 362 F.3d at 1003 ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543. Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE. *O'Connor- Spinner*, 627 F.3d at 619.

On remand, new VE testimony will need to be obtained based on appropriate disability and

RFC findings, and the ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE.

**D.     Other Disability Applications**

Plaintiff also indicates that this is the second pair of disability applications she has submitted, but that the earlier, 2009 decision denying benefits has yet to become an appealable final decision of the Commissioner.  The Court suggests that the Commissioner may want to use the opportunity provided by remand of the instant case to consolidate Plaintiff's applications and review them together.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief (Corrected) [DE 13]  and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 9th day of September, 2013.

s/ John. E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record